[Cite as *In re R.L.C.*, 2012-Ohio-5893.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 98283**

# IN RE: R.L.C.

# A Minor Child

# [Appeal by Mother]

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. CU 09115144

**BEFORE:** S. Gallagher, J., Blackmon, A.J., and Jones, J.

**RELEASED AND JOURNALIZED:** December 13, 2012

**ATTORNEY FOR APPELLANT**

Michael Cretella
Law Offices of Michael Cretella, LLC
107 North Court Street
Suite 7
Medina, OH   44256


**ATTORNEY FOR APPELLEE**

Nicole C. Longino
11811 Shaker Blvd.
Suite 420
Cleveland, OH   44120

**Also listed:**
**Guardian Ad Litem**

Tiffany Wright
330 East 211th Street
Euclid, OH   44123

SEAN C. GALLAGHER, J.:

{¶1} Appellant, R.W. ("mother"), appeals the decision of the Cuyahoga County Court of Common Pleas, Juvenile Division, that designated R.C. ("father") as the residential parent and legal custodian of their minor child, R.L.C. For the reasons stated herein, we affirm.

{¶2} Mother and father are the parents of R.L.C., who was born in May 2006. Prior to this action, R.L.C. resided with mother; however, R.L.C. spent almost 50 percent of his time with father, who had unlimited visitation. In August 2009, mother informed father that she was engaged and would be moving to Tennessee. The parties were unable to come to an agreement about a future visitation schedule. On August 18, 2009, father filed an application to determine custody for R.L.C.

{¶3} Mother moved to Tennessee with R.L.C. on September 20, 2009, and was married soon after. On September 29, 2009, there was an altercation involving R.L.C.'s half sister, mother, and stepfather, which resulted in the half sister being sent to stay with her father in Cleveland. Following this incident, and after being unable to communicate with his son, father filed for emergency custody of R.L.C.

{¶4} A hearing was held on the motion, and the parties agreed that R.L.C. would remain with father until the date of the next hearing, which was set for November 3, 2009.

**{¶5}** R.L.C. developed a medical condition requiring hospitalization. The child was scheduled for discharge from the hospital on the same date as the impending hearing. There was evidence that mother instructed R.L.C.'s maternal grandfather to go to the hospital and remove the child upon discharge and did not advise the doctors that she and father were in court proceedings regarding custody.

**{¶6}** At the hearing, the parties were advised that mother had obtained, in Tennessee, a temporary protection order ("TPO") against father on October 26, 2009, following multiple phone calls from father to her home. The terms of the TPO precluded father from having any contact with mother or even speaking to R.L.C. The trial court ordered temporary custody to father pending further order of the court.

**{¶7}** The case proceeded to trial on January 7, 2010. There was testimony that prior to trial, mother canceled two visits with the child because of the child becoming upset at the end of visits with mother. The guardian ad litem indicated that she had drafted a proposed shared parenting plan for the parties.

**{¶8}** On January 21, 2010, the magistrate issued a decision naming father as the residential parent and legal custodian of R.L.C. with visitation to mother. Although mother and father each submitted a proposed shared parenting plan, the magistrate's decision erroneously indicated that "neither party has presented the court with a proposed shared parenting plan."

**{¶9}** Mother filed an objection to the magistrate's decision, and later filed a supplemental objection. Ultimately, the trial court overruled the objections, determined

that shared parenting was not in the best interest of R.L.C., and approved the designation of father as the residential parent and legal custodian of R.L.C.

{¶10} Mother has appealed the decision of the trial court, raising two assignments of error for our review that provide as follows:

> I.  The trial court erred by not adopting either mother's or father's shared parenting plan.

> II.  The trial court erred by naming father as R.L.C.'s residential parent and ordering mother to having [sic] her visitation only in Cuyahoga County.

{¶11} We review a juvenile court's custody determination under an abuse of discretion standard.  *Toon v. Sowder*, 12th Dist. No. CA2012-02-011, 2012-Ohio-4225, ¶ 10.  The term "abuse of discretion" implies that the court's attitude was unreasonable, arbitrary, or unconscionable.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶12} R.C. 2151.23(F)(1) provides that the "juvenile court shall exercise its jurisdiction in child custody matters in accordance" with section R.C. 3109.04, which authorizes domestic relations courts to allocate parental rights and responsibilities for the care of minor children.  R.C. 3109.04 expresses a strong presumption in favor of shared parenting; however, the presumption can be overcome by evidence showing that shared parenting would not be in the child's best interest.  *Kong v. Kong*, 8th Dist. No. 93120, 2010-Ohio-3180, ¶ 6.  If each parent files a separate plan for shared parenting, the trial court must review the plans to determine whether either is in the best interest of the child.  R.C. 3109.04(D)(1)(a)(ii).  However, the approval of a shared parenting plan is

discretionary with the court. R.C. 3109.04(D)(1)(b). Furthermore, the court shall not approve any shared parenting plan unless it determines that the plan is in the best interest of the child. R.C. 3109.04(D)(1)(b).

{¶13} R.C. 3109.04(A)(1) provides in relevant part as follows:

(1) * * * [I]f at least one parent files both a pleading or motion and a shared parenting plan * * * but no plan for shared parenting is in the best interest of the children, the court, in a manner consistent with the best interest of the children, shall allocate the parental rights and responsibilities for the care of the children primarily to one of the parents, designate that parent as the residential parent and the legal custodian of the child, and divide between the parents the other rights and responsibilities for the care of the children, including, but not limited to, the responsibility to provide support for the children and the right of the parent who is not the residential parent to have continuing contact with the children.

{¶14} R.C. 3109.04(F)(1) and (F)(2) set forth a number of nonexclusive factors to guide the court's determination concerning the best interest of the children and whether a shared parenting plan is in their best interest. All relevant factors are to be considered in making a best interest determination.

{¶15} Mother argues that the trial court abused its discretion because the magistrate's decision represented that neither party had filed a proposed shared parenting plan and the magistrate failed to follow the procedures outlined in R.C.

3109.04(D)(1)(a)(ii). However, when considering mother's objection to the magistrate's decision, the trial court recognized the magistrate's error and acknowledged that both parents had submitted plans. Upon a full and independent review of the record, including all filings and the transcript of the hearing, the trial court concluded that "shared parenting would not be in the child's best interests as the parents have clearly demonstrated an inability to share." In reaching this determination, the trial court gave due consideration to all of the relevant factors listed in R.C. 3109.04(F)(1) and (F)(2) and made numerous findings in support of this determination. The trial court found in part as follows:

> Based on the testimony of the parties, it is clear that the parties have not been able to cooperate and make joint decisions since mother's decision to move, with the child, out-of-state. Regardless of who has had possession or custody of the child, the child has been like a toy, pulled by the two competing parents. Even the GAL who recommended shared parenting admitted that everything needed to be spelled out in a shared parenting agreement, to prevent misinterpretations or problems, because the parents could not resolve their problems, reach a compromise or solution to disagreements. This admission by the GAL clearly demonstrated that she believed these parents could not presently SHARE this child, even though the GAL recommended shared parenting. Shared parenting, practically speaking, requires two parties who are able to communicate, cooperate, work together, set aside personal differences in order to protect the best interests of their child. That is not the case herein.

> The mother chose to marry and move out-of-state but did not reach an agreement, or seek court mediation to determine the visitation and possession schedule for the father before she left. Rather than seeking assistance from her attorney in Ohio and the GAL for the child in Ohio, mother sought a TPO in Tennessee. While she has every right to do so, she demonstrated a knee-jerk reaction to the father's behaviors, a harsh and punitive reaction, and did not take advantage of the people currently involved with her and her family to assist her in reaching a softer solution to the situation. These actions of the mother were all to the detriment, and

not the best interests of this child.

Therefore, based on a full and independent review of the evidence, motions and transcript, the court finds that shared parenting would not be in this child's best interests as the parents have clearly demonstrated an inability to share.

**{¶16}** The trial court overruled the objection to the magistrate's decision as harmless. Upon the court's independent review of the entire record, which includes the shared parenting plans, the trial court found shared parenting was not in the best interest of R.L.C. This determination, as well as the trial court's decision to designate father as the residential parent and legal custodian of R.L.C., was supported by competent, credible evidence in the record. Finding no abuse of discretion, we overrule mother's first assignment of error.

**{¶17}** Mother also argues the court erred by restricting her visitation to Cuyahoga County. Mother's argument is based on the visitation schedule that followed the magistrate's decision. The record reflects that the trial court's final judgment entry, which was journalized on January 14, 2011, incorporates a visitation schedule that allows mother to have her visitation in Tennessee and requires the parties to meet halfway, in Montgomery, Ohio, for the exchange. Thus, mother's second assignment of error is moot.

**{¶18}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, JUDGE

PATRICIA ANN BLACKMON, A.J., and
LARRY A. JONES, SR., J., CONCUR